**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **BRANDON CALLIER,** | § | |
| | § | |
| **Plaintiff,** | § | **Case No. EP-24-cv-00363-LS** |
| | § | |
| **v.** | § | |
| | § | |
| **UNITED FUNDINGS, LLC,** a Delaware Limited | § | |
| Liability Company and **JEFFREY TILLER** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1.      Plaintiff BRANDON CALLIER ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.      Defendant UNITED FUNDINGS LLC ("United") is a limited liability company organized and existing under the laws of Delaware with a purported principal business address of 800 Third Ave, 15th Floor, New York, New York 10022, and can be served via registered agent Delaware Corporations LLC, 1000 N. West Street, STE 1501, Wilmington, Delaware 19801.

3.      Defendant JEFFREY TILLER ("Tiller") is a natural person and believed to be a resident of New York.  Tiller is the Executive Director and Chief Executive Officer of Defendant United and personally participated in the phone calls alleged herein.  Tiller's purported address is 749 E. 135th Street, Suite 207, New York, New York 10454. If this is not a good address Plaintiff will seek alternative services via the email address info@unitedfundings.com.

Info@unitedfundings.com is an email address of which Tiller is the owner and regular user.

1

4.      Defendants United and Tiller are hereinafter collectively referred to as ("Defendants").

## JURISDICTION AND VENUE

5.      **Jurisdiction.**  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

6.      **Personal Jurisdiction.**  This Court has specific personal jurisdiction over the Defendants because they purposefully availed themselves to the State of Texas and this District, and there is a sufficient relationship between Defendants' purposeful contacts with Texas and the litigation.

   a. Defendants target Texas when marketing small business loans and regularly conduct business in this District, including telephone solicitation.

   b. Its agents sent phone calls to Plaintiff's El Paso area phone number with area code 915 to generate leads for Defendants.

   c. Defendants purposefully called Plaintiff at his 915-area code phone number despite repeated do not call (DNC) requests.

   d. Defendants purposefully spoofed phone calls utilizing a 915 Texas area code in order to trick Plaintiff into answering the phone calls when Plaintiff began to ignore Defendants.

   e. The purposeful phone calls to Texas injured Plaintiff in Texas, creating a causal link among Defendants, the forum, and the litigation that exceeds the non-causal

affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021.

    f.    Defendants continued to purposefully contact Plaintiff in Texas despite repeated requests to stop making phone calls to Plaintiff.

7.    **Venue.**  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Plaintiff was residing in the Western District of Texas when he received a substantial, if not every single call from the Defendants that are the subject matter of this lawsuit.

8.    This Court has venue over Defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

9.    In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11.    The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13.    Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).

14.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15.    According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16.    The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17.    The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded

messages by or on behalf of a specific seller; and (2) having received this information, agrees

unambiguously to receive such calls at a telephone number the consumer designates. In addition,

the written agreement must be obtained without requiring, directly or indirectly, that the

agreement be executed as a condition of purchasing any good or service.

18.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

regulations "generally establish that the party on whose behalf a solicitation is made bears

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing

the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be

held vicariously liable under federal common law principles of agency for violations of either

section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter

of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d

946, 951 – 52 (9th Cir. 2009).

21.     A corporate officer involved in the telemarketing at issue may be personally liable under

the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist.

LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

actors can be individually liable for violating the TCPA where they had direct, personal

participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D.

Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability,

the TCPA would lose much of its force.").

**The Texas Business and Commerce Code § 302.101**

22.     The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

23.     "' Telephone solicitation' means a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." Tex. Bus. & Com. Code § 302.001(7).

24.     "A person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation." Tex. Bus. & Com. Code § 302.002.

25.     A "seller" is defined as "A person who makes a telephone solicitation on the person's on behalf." Tex. Bus. & Com. Code § 302.001(5).

26.     A "salesperson" is defined as "A person who is employed or authorized by a seller to make a telephone solicitation." Tex. Bus. & Com. Code §302.001(4).

27.     Federal common law principles of agency apply to TBCC violations…and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent of the seller. *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-cv-235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023); *see also Callier v. Tip Top Cap. Inc.*, No. EP-23-cv-437, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024) (holding that a seller violates § 302.101 when a telemarketer makes calls on behalf of a seller who does not hold a registration certificate); *Forteza v. Pelican Inv. Holdings Grp., LLC*, No. 23-cv-401, 2023 WL 9199001, at *6 (E.D. Tex. Dec. 27, 2023) (same); *Salaiz v. Beyond Fin., LLC*, No. EP-23-cv-6, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) (refusing to dismiss a § 302.101 claim because "Plaintiff has

plausibly alleged that Defendant effected or attempted to effect the thirteen calls Plaintiff received by hiring telemarketers to make those calls.").

28.     The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees. Tex. Bus. Com. Code § 302.302 (d).

29.     Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

30.     The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish."  Tex. Bus. & Com. Code § 17.50.

## FACTUAL ALLEGATIONS

31.     Plaintiff successfully registered his phone number ending in 4604 on the National Do-Not-Call Registry ("DNC") in December 2007.

32.     Plaintiff was registered on the National DNC at all times relevant to this Complaint.

33.     Plaintiff has been besieged with phone calls related to a merchant cash advance (MCA).

34.     MCAs are unregulated "loans" made via an agreement to purchase future revenues of a business.  MCAs are designed to bypass usury laws that prevent companies from charging extraordinary interest rates.  MCAs often exceed 50% interest rates.

35.     Each phone call and text message in this Instant Action was a solicitation of a merchant cash advance by Defendants to Plaintiff.

36.   Defendant United solicits MCA loans to business owners on behalf of themselves and other lenders.

37.   Plaintiff has been inundated with phone calls from companies offering MCAs.  This includes receiving at least 251 phone calls from Defendants.

38.   On March 7, 2023, Plaintiff filed cause number EP-23-cv-00102-KC in the Western District of Texas, alleging TCPA violations against Defendants Tiller and United Fundings.

39.   Plaintiff hired multiple process servers and skip tracers to locate Tiller and United Fundings but was unable to uncover their location.

40.   Plaintiff has now learned that Defendant United is a Delaware corporation and maintains the registered agent Delaware Corporations LLC, 1000 N. West Street, STE 1501, Wilmington, Delaware 19801.

41.   **CALL # 1**.  On September 30, 2021, Plaintiff received the first of at least 251 phone calls from Defendants.  The phone call came from phone number 347-749-9783.  "Allen" was the name given by the agent.

42.   **CALLS 2-13**.  Calls two through thirteen came from Allen from the same 347-749-9783 phone number.

43.   On March 25, 2022, Plaintiff received the first of at least 231 phone calls from Defendant Tiller using phone number 212-238-2500.

44.   Defendant Tiller continued to solicit Plaintiff for a Merchant Cash Advance for months despite Plaintiff making multiple do-not-call requests to Defendant Tiller.

45.   On April 18, 2022, Plaintiff received a phone call utilizing a spoofed called ID displaying 915-383-1711 on the caller ID.  Through information and belief, this spoofed caller ID was

designed to trick Plaintiff into answering the phone because Plaintiff had been ignoring Defendants' phone calls.

46.     **DNC Request # 1:**  Plaintiff answered the phone on April 18, 2022, with 915-383-1711 showing on the caller ID.  Plaintiff answered the phone and spoke to Defendant Tiller.  The following conversation ensued.

> Tiller:  I have been asking you for weeks did you want it.  You could have been like look, I don't want it.
>
> Plaintiff:  I just asked you not to call me back.  You're calling me back.
>
> Tiller:  You're acting like you're talking to a female.  You're not talking to a female. You're not talking to a girl, bro.
>
> Plaintiff:  Did you really just say that?  Are you really going to talk to me that way?
>
> Tiller:  I'm not a girl.  Brandon, I'm not a girl.
>
> Plaintiff:  I didn't say you were a girl.
>
> Tiller:  I'm a man.  You're talking to a man.
>
> Plaintiff:  Do we have to add misogyny to this?
>
> Tiller: I could care less if you take the $100,000 or not.  What I do care about is you wasting my time and acting like you're talking to a female.  You're not talking to a female.

47.     Defendants United and Tiller have engaged in repeated and consistent harassment of Plaintiff.  Defendants United and Tiller have ignored numerous Do Not Call requests by Plaintiff.

48. **DNC Request # 2**:  On April 18, 2022, Plaintiff was called immediately after the phone

call in paragraph 38.  Plaintiff again answered the phone call and asked Defendant not to call him

again.  Defendant Tiller became irate and began telling Plaintiff to not treat him like a woman."

On one phone call Defendant Tiller informed Plaintiff:

> Tiller:  I just want to make sure we have a 100% understanding.  I will call you whenever
> I want to call you.
>
> Plaintiff:  I keep telling you to stop, and you keep doing it.
>
> Tiller:  I don't care.  I don't care.
>
> Plaintiff:  You're gonna keep doing it?
>
> Tiller:  I don't care.  Whenever I want to, Brandon."
>
> Plaintiff:  Don't you think that's harassment?
>
> Tiller:  No, of course not, Brandon.  You told me to do that."
>
> Plaintiff:  I'm gonna hang up and see if you have the nerve to call me back.
>
> Tiller:  Of course I will, Brandon.
>
> Plaintiff:  Ok, well, I am telling you not to.
>
> Tiller:  Brandon, I will call you whenever I want to.  Brandon, I will call you whenever I
> want.  You're a girl Brandon.

49. Defendant Tiller called Plaintiff back as he said he would in paragraph 42.

50. **DNC Requests 3-6**:  Defendant Tiller made four additional phone calls using spoofed

caller ID 915-383-1711 that included the same misogyny and ignored do-not-call requests in

paragraphs 40 and 42.  Plaintiff made DNC requests on each of these phone calls.

51. **DNC Request #7**:  On April 21, 2022, at 7:52 AM Plaintiff sent Defendant Tiller a text

message stating, "I cannot take the constant loan calls that start as early as 7 AM every single

day. Please don't call again.

52.     On May 10, 2022, Plaintiff received yet another phone call from Defendant Tiller. Plaintiff hung up the phone because he was tired of being harassed by Defendant Tiller.

53.     Defendant Tiller understood he had been hung up on because Tiller responded by sending Plaintiff a text message stating, "Brandon – you just answered and then the call hung up."

54.     Defendant Tiller has continued to text and call Plaintiff to this very day despite at least seven DNC requests and having the phone hung up in his face.

55.     Prior to the phone calls Plaintiff had never heard of United and had never had an established business relationship with Defendants.

56.     Plaintiff did, at one point fill out an application with Defendants in order to find out who the lender was and the true identity of United Fundings.

57.     Plaintiff does not seek compensation for the phone calls that occurred between the issuing of a contract with Capybara and Plaintiff delivering numerous do-not-call requests to Defendants United and Tiller.

58.     The phone calls, in this case, were sent without Plaintiff's prior express written consent and were not sent related to any emergency purpose.

59.     Defendants United and Tiller have engaged in repeated and consistent harassment of Plaintiff.  Defendants United and Tiller have ignored numerous Do Not Call requests by Plaintiff.

60.     Defendants continued with unsolicited phone calls and text messages attempting to get Plaintiff to sign a contract and take the high-interest MCA.

61.     Defendants United and Tiller called Plaintiff at least 164 times after the initial Do Not Call Request.

62.     Table A below displays calls and text messages made to Plaintiff by the Defendants:

**TABLE A**

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 09/30/2021 | 10:00 AM | 347-749-9783 | PHONE CALL |
| 2 | 10/05/2021 | 11:28 AM | 347-749-9783 | TEXT |
| 3 | 10/18/2021 | 10:19 AM | 347-749-9783 | TEXT |
| 4 | 10/18/2021 | 11:48 AM | 347-749-9783 | TEXT |
| 5 | 10/19/2021 | 7:12 AM | 347-749-9783 | TEXT |
| 6 | 02/02/2022 | 9:55 AM | 347-749-9783 | TEXT |
| 7 | 02/03/2022 | 9:43 AM | 347-749-9783 | PHONE CALL |
| 8 | 02/09/2022 | 10:01 AM | 347-749-9783 | PHONE CALL |
| 9 | 02/09/2022 | 4:11 PM | 347-749-9783 | TEXT |
| 10 | 02/17/2022 | 9:42 AM | 347-749-9783 | TEXT |
| 11 | 02/17/2022 | 9:42 AM | 347-749-9783 | TEXT |
| 12 | 03/22/2022 | 12:17 PM | 347-749-9783 | PHONE CALL |
| 13 | 03/24/2022 | 8:21 AM | 347-749-9783 | PHONE CALL |
| 14 | 03/25/2022 | 2:45 PM | 212-328-2500 | TEXT |
| 15 | 03/25/2022 | 2:45 PM | 212-328-2500 | TEXT |
| 16 | 03/25/2022 | 3:07 PM | 212-328-2500 | PHONE CALL |
| 17 | 03/25/2022 | 3:19 PM | 212-328-2500 | TEXT |
| 18 | 03/26/2022 | 9:03 AM | 212-328-2500 | TEXT |
| 19 | 03/28/2022 | 7:30 AM | 212-328-2500 | TEXT |
| 20 | 03/28/2022 | 1:41 PM | 212-328-2500 | TEXT |
| 21 | 03/28/2022 | 6:26 PM | 212-328-2500 | TEXT |
| 22 | 03/29/2022 | 6:43 AM | 212-328-2500 | TEXT |
| 23 | 03/29/2022 | 11:22 AM | 212-328-2500 | TEXT |
| 24 | 03/29/2022 | 4:22 PM | 212-328-2500 | MISSED CALL |
| 25 | 03/29/2022 | 4:24 PM | 212-328-2500 | TEXT |
| 26 | 03/31/2022 | 7:26 AM | 212-328-2500 | TEXT |
| 27 | 03/31/2022 | 7:26 AM | 212-328-2500 | TEXT |
| 28 | 03/31/2022 | 11:23 AM | 212-328-2500 | 1 Min 18 Sec |
| 29 | 03/31/2022 | 5:09 PM | 212-328-2500 | TEXT |
| 30 | 04/01/2022 | 8:27 AM | 212-328-2500 | TEXT |
| 31 | 04/01/2022 | 6:08 PM | 212-328-2500 | TEXT |
| 32 | 04/02/2022 | 10:02 AM | 212-328-2500 | Missed Call |
| 33 | 04/02/2022 | 10:04 AM | 212-328-2500 | TEXT |
| 34 | 04/02/2022 | 10:05 AM | 212-328-2500 | TEXT |
| 35 | 04/02/2022 | 10:06 AM | 212-328-2500 | TEXT |
| 36 | 04/03/2022 | 11:02 AM | 212-328-2500 | TEXT |
| 37 | 04/04/2022 | 7:47 AM | 212-328-2500 | TEXT |
| 38 | 04/05/2022 | 7:52 AM | 212-328-2500 | TEXT |

| 39 | 04/05/2022 | 7:52 AM | 212-328-2500 | TEXT |
|----|------------|---------|--------------|------|
| 40 | 04/05/2022 | 10:38 AM | 212-328-2500 | MISSED CALL |
| 41 | 04/05/2022 | 10:40 AM | 212-328-2500 | TEXT |
| 42 | 04/06/2022 | 12:09 PM | 212-328-2500 | TEXT |
| 43 | 04/06/2022 | 12:09 PM | 212-328-2500 | TEXT |
| 44 | 04/06/2022 | 4:57 PM | 212-328-2500 | MISSED CALL |
| 45 | 04/06/2022 | 4:58 PM | 212-328-2500 | TEXT |
| 46 | 04/07/2022 | 2:19 PM | 212-328-2500 | TEXT |
| 47 | 04/07/2022 | 2:30 PM | 212-328-2500 | TEXT |
| 48 | 04/11/2022 | 5:29 PM | 212-328-2500 | TEXT |
| 49 | 04/11/2022 | 2:19 PM | 212-328-2500 | TEXT |
| 50 | 04/11/2022 | 7:51 AM | 212-328-2500 | TEXT |
| 21 | 04/11/2022 | 7:51 AM | 212-328-2500 | TEXT |
| 52 | 04/11/2022 | 8:36 AM | 212-328-2500 | MISSED CALL |
| 53 | 04/11/2022 | 6:31 PM | 212-328-2500 | TEXT |
| 54 | 04/11/2022 | 6:34 PM | 212-328-2500 | TEXT |
| 55 | 04/11/2022 | 6:35 PM | 212-328-2500 | TEXT |
| 56 | 04/11/2022 | 6:36 PM | 212-328-2500 | TEXT |
| 57 | 04/11/2022 | 6:40 PM | 212-328-2500 | TEXT |
| 58 | 04/11/2022 | 6:47 PM | 212-328-2500 | TEXT |
| 59 | 04/11/2022 | 6:48 PM | 212-328-2500 | TEXT |
| 60 | 04/12/2022 | 7:48 AM | 212-328-2500 | TEXT |
| 61 | 04/12/2022 | 11:51 AM | 212-328-2500 | TEXT |
| 62 | 04/12/2022 | 11:56 AM | 212-328-2500 | TEXT |
| 63 | 04/12/2022 | 12:03 PM | 212-328-2500 | TEXT |
| 64 | 04/12/2022 | 12:04 PM | 212-328-2500 | TEXT |
| 65 | 04/12/2022 | 12:10 PM | 212-328-2500 | TEXT |
| 66 | 04/12/2022 | 1:43 PM | 212-328-2500 | TEXT |
| 67 | 04/12/2022 | 2:31 PM | 212-328-2500 | TEXT |
| 68 | 04/12/2022 | 2:32 PM | 212-328-2500 | TEXT |
| 69 | 04/12/2022 | 3:46 PM | 212-328-2500 | TEXT |
| 70 | 04/12/2022 | 4:35 PM | 915-383-1711 | MISSED CALL |
| 71 | 04/12/2022 | 5:21 PM | 212-328-2500 | TEXT |
| 72 | 04/12/2022 | 6:36 PM | 212-328-2500 | MISSED CALL |
| 73 | 04/12/2022 | 6:38 PM | 212-328-2500 | TEXT |
| 74 | 04/12/2022 | 6:29 AM | 212-328-2500 | TEXT |
| 75 | 04/13/2022 | 6:30 AM | 212-328-2500 | TEXT |
| 76 | 04/13/2022 | 7:18 AM | 212-328-2500 | MISSED CALL |

| 77 | 04/13/2022 | 8:02 AM | 612-662-4205 | TEXT |
|---|---|---|---|---|
| 78 | 04/13/2022 | 9:35 AM | 347-749-9783 | TEXT |
| 79 | 04/13/2022 | 12:38 PM | 347-749-9783 | TEXT |
| 80 | 04/13/2022 | 12:38 PM | 347-749-9783 | TEXT |
| 81 | 04/14/2022 | 7:21 AM | 347-749-9783 | TEXT |
| 82 | 04/14/2022 | 7:21 AM | 347-749-9783 | TEXT |
| 83 | 04/14/2022 | 9:31 AM | 347-749-9783 | TEXT |
| 84 | 04/14/2022 | 9:32 AM | 347-749-9783 | TEXT |
| 85 | 04/14/2022 | 5:12 PM | 915-383-1711 | MISSED CALL |
| 86 | 04/16/2022 | 9:31 AM | 212-328-2500 | MISSED CALL |
| 87 | 04/16/2022 | 9:18 AM | 212-328-2500 | TEXT |
| 88 | 04/16/2022 | 9:33 AM | 212-328-2500 | TEXT |
| 89 | 04/16/2022 | 10:52 AM | 212-328-2500 | TEXT |
| 90 | 04/16/2022 | 11:52 AM | 212-328-2500 | MISSED CALL |
| 91 | 04/16/2022 | 11:54 AM | 212-328-2500 | TEXT |
| 92 | 04/16/2022 | 11:54 AM | 212-328-2500 | TEXT |
| 93 | 04/16/2022 | 3:41 PM | 212-328-2500 | TEXT |
| 94 | 04/16/2022 | 6:53 PM | 212-328-2500 | TEXT |
| 95 | 04/17/2022 | 11:53 AM | 212-328-2500 | TEXT |
| 96 | 04/18/2022 | 6:57 AM | 212-328-2500 | MISSED CALL |
| 97 | 04/18/2022 | 6:59 AM | 212-328-2500 | TEXT |
| 98 | 04/18/2022 | 7:00 AM | 212-328-2500 | TEXT |
| 99 | 04/18/2022 | 8:07 AM | 212-328-2500 | MISSED CALL |
| 100 | 04/18/2022 | 8:08 AM | 212-328-2500 | TEXT |
| 101 | 04/18/2022 | 9:10 AM | 212-328-2500 | MISSED CALL |
| 103 | 04/18/2022 | 9:12 AM | 212-328-2500 | TEXT |
| 103 | 04/18/2022 | 10:53 AM | 915-383-1711 | DNC REQUEST |
| 104 | 04/18/2022 | 10:54 AM | 915-383-1711 | I AM NOT A WOMAN |
| 105 | 04/18/2022 | 10:59 AM | 915-383-1711 | DNC REQUEST |
| 106 | 04/18/2022 | 11:02 AM | 915-383-1711 | DNC REQUEST |
| 107 | 04/18/2022 | 11:06 AM | 915-383-1711 | DNC REQUEST |
| 108 | 04/18/2022 | 11:13 AM | 915-383-1711 | DNC REQUEST |
| 109 | 04/18/2022 | 11:20 AM | 212-328-2500 | MISSED CALL |
| 110 | 04/18/2022 | 12:21 PM | 844-488-1841 | PRETENDED TO BE INTERESTED TO FIND OUT WHO WAS HARASSING ME |
| 111 | 04/18/2022 | 12:32 PM | 844-488-1841 | |
| 112 | 04/18/2022 | 12:57 PM | 844-488-1841 | |
| 113 | 04/18/2022 | 1:58 PM | 212-328-2500 | DECLINED CALL |

| 114 | 04/18/2022 | 1:59 PM | 212-328-2500 | TEXT |
|---|---|---|---|---|
| 115 | 04/18/2022 | 2:01 PM | 212-328-2500 | TEXT |
| 116 | 04/18/2022 | 3:17 PM | 212-328-2500 | TEXT |
| 117 | 04/18/2022 | 5:41 PM | 212-328-2500 | MISSED CALL |
| 118 | 04/18/2022 | 5:42 PM | 212-328-2500 | TEXT |
| 119 | 04/19/2022 | 7:10 AM | 212-328-2500 | TEXT |
| 120 | 04/19/2022 | 7:57 AM | 212-328-2500 | MISSED CALL |
| 121 | 04/19/2022 | 7:58 AM | 212-328-2500 | TEXT |
| 122 | 04/19/2022 | 8:44 AM | 212-328-2500 | MISSED CALL |
| 123 | 04/19/2022 | 9:43 AM | 212-328-2500 | MISSED CALL |
| 124 | 04/19/2022 | 9:44 AM | 212-328-2500 | TEXT |
| 125 | 04/19/2022 | 11:32 AM | 212-328-2500 | MISSED CALL |
| 126 | 04/19/2022 | 12:19 PM | 212-328-2500 | TEXT |
| 127 | 04/19/2022 | 6:20 PM | 212-328-2500 | TEXT |
| 128 | 04/19/2022 | 6:58 PM | 212-328-2500 | DECLINED CALL |
| 129 | 04/19/2022 | 6:59 PM | 212-328-2500 | TEXT |
| 130 | 04/20/2022 | 7:05 AM | 212-328-2500 | MISSED CALL |
| 131 | 04/20/2022 | 7:49 AM | 212-328-2500 | MISSED CALL |
| 132 | 04/20/2022 | 9:11 AM | 212-328-2500 | MISSED CALL |
| 133 | 04/20/2022 | 9:12 AM | 212-328-2500 | TEXT |
| 134 | 04/20/2022 | 12:46 PM | 212-328-2500 | MISSED CALL |
| 135 | 04/20/2022 | 2:05 PM | 212-328-2500 | MISSED CALL |
| 136 | 04/20/2022 | 3:11 PM | 212-328-2500 | MISSED CALL |
| 137 | 04/20/2022 | 4:24 PM | 212-328-2500 | MISSED CALL |
| 138 | 04/20/2022 | 4:25 PM | 212-328-2500 | TEXT |
| 139 | 04/21/2022 | 7:13 AM | 212-328-2500 | MISSED CALL |
| 140 | 04/21/2022 | 7:14 AM | 212-328-2500 | TEXT |
| 141 | 04/21/2022 | 7:51 AM | 212-328-2500 | MISSED CALL |
| 142 | 04/21/2022 | 7:51 AM | 212-328-2500 | TOLD TO NEVER CALL AGAIN IN TEXT MESSAGE |
| 143 | 04/21/2022 | 8:08 AM | 212-328-2500 | TEXT |
| 144 | 04/22/2022 | 7:21 AM | 212-328-2500 | TEXT |
| 145 | 04/22/2022 | 7:37 AM | 212-328-2500 | TEXT |
| 146 | 04/22/2022 | 3:37 PM | 212-328-2500 | TEXT |
| 147 | 04/22/2022 | 3:28 PM | 212-328-2500 | TEXT |
| 148 | 04/22/2022 | 8:29 AM | 212-328-2500 | TEXT |
| 149 | 04/23/2022 | 9:11 AM | 212-328-2500 | TEXT |
| 150 | 04/25/2022 | 9:01 AM | 212-328-2500 | TEXT |
| 151 | 04/25/2022 | 9:32 AM | 212-328-2500 | 6 MIN 26 SEC |
| 152 | 04/25/2022 | 12:04 PM | 212-328-2500 | MISSED CALL |
| 153 | 04/25/2022 | 12:05 PM | 212-328-2500 | TEXT |
| 154 | 04/25/2022 | 12:16 PM | 212-328-2500 | MISSED CALL |
| 155 | 04/25/2022 | 12:17 PM | 212-328-2500 | TEXT |
| 156 | 04/25/2022 | 2:33 PM | 212-328-2500 | MISSED CALL |
| 157 | 04/25/2022 | 2:34 PM | 212-328-2500 | TEXT |

| 158 | 04/25/2022 | 4:36 PM | 212-328-2500 | DECLINED CALL |
| 159 | 04/25/2022 | 4:37 PM | 212-328-2500 | TEXT |
| 160 | 04/25/2022 | 7:35 PM | 212-328-2500 | MISSED CALL |
| 161 | 04/26/2022 | 8:48 AM | 212-328-2500 | DECLINED CALL |
| 162 | 04/26/2022 | 11:30 AM | 212-328-2500 | MISSED CALL |
| 163 | 04/26/2022 | 11:31 AM | 212-328-2500 | TEXT |
| 164 | 04/26/2022 | 4:50 PM | 212-328-2500 | MISSED CALL |
| 165 | 04/26/2022 | 4:50 PM | 212-328-2500 | TEXT |
| 166 | 04/27/2022 | 8:21 AM | 212-328-2500 | |
| 167 | 04/27/2022 | 8:23 AM | 212-328-2500 | TEXT |
| 168 | 04/27/2022 | 8:51 AM | 212-328-2500 | MISSED CALL |
| 169 | 04/27/2022 | 11:12 AM | 212-328-2500 | MISSED CALL |
| 170 | 04/27/2022 | 6:30 PM | 212-328-2500 | TEXT |
| 171 | 04/28/2022 | 8:21 AM | 212-328-2500 | MISSED CALL |
| 172 | 04/28/2022 | 10:40 AM | 212-328-2500 | MISSED CALL |
| 173 | 04/28/2022 | 10:41 AM | 212-328-2500 | TEXT |
| 174 | 04/28/2022 | 4:04 PM | 212-328-2500 | MISSED CALL |
| 175 | 04/28/2022 | 6:18 PM | 212-328-2500 | MISSED CALL |
| 176 | 04/28/2022 | 6:19 PM | 212-328-2500 | TEXT |
| 177 | 04/29/2022 | 9:56 AM | 212-328-2500 | MISSED CALL |
| 178 | 04/29/2022 | 9:57 AM | 212-328-2500 | TEXT |
| 179 | 04/29/2022 | 5:26 PM | 212-328-2500 | MISSED CALL |
| 180 | 04/30/2022 | 8:29 AM | 212-328-2500 | MISSED CALL |
| 181 | 04/30/2022 | 8:30 AM | 212-328-2500 | TEXT |
| 182 | 05/01/2022 | 10:08 AM | 212-328-2500 | MISSED CALL |
| 183 | 05/01/2022 | 10:09 AM | 212-328-2500 | TEXT |
| 184 | 05/02/2022 | 8:43 AM | 212-328-2500 | MISSED CALL |
| 185 | 05/02/2022 | 8:44 AM | 212-328-2500 | TEXT |
| 186 | 05/02/2022 | 11:27 AM | 212-328-2500 | MISSED CALL |
| 187 | 05/02/2022 | 5:37 PM | 212-328-2500 | MISSED CALL |
| 188 | 05/02/2022 | 5:38 PM | 212-328-2500 | TEXT |
| 189 | 05/03/2022 | 9:06 AM | 212-328-2500 | MISSED CALL |
| 190 | 05/03/2022 | 9:08 AM | 212-328-2500 | TEXT |
| 191 | 05/03/2022 | 5:17 PM | 212-328-2500 | MISSED CALL |
| 192 | 05/04/2022 | 8:43 AM | 212-328-2500 | MISSED CALL |
| 193 | 05/04/2022 | 8:44 AM | 212-328-2500 | TEXT |
| 194 | 05/04/2022 | 11:33 AM | 212-328-2500 | MISSED CALL |
| 195 | 05/04/2022 | 4:02 PM | 212-328-2500 | MISSED CALL |
| 196 | 05/05/2022 | 11:51 AM | 212-328-2500 | MISSED CALL |
| 197 | 05/05/2022 | 11:54 AM | 212-328-2500 | LEFT VOICEMAIL |
| 198 | 05/05/2022 | 11:54 AM | 212-328-2500 | TEXT |
| 199 | 05/05/2022 | 2:32 PM | 212-328-2500 | MISSED CALL |
| 200 | 05/06/2022 | 9:06 AM | 212-328-2500 | MISSED CALL |
| 201 | 05/06/2022 | 12:14 PM | 212-328-2500 | MISSED CALL |
| 202 | 05/09/2022 | 8:12 AM | 212-328-2500 | MISSED CALL |

| 203 | 05/09/2022 | 8:14 AM | 212-328-2500 | TEXT |
|---|---|---|---|---|
| 204 | 05/10/2022 | 8:10 AM | 212-328-2500 | MISSED CALL |
| 205 | 05/10/2022 | 8:12 AM | 212-328-2500 | TEXT |
| 206 | 05/10/2022 | 8:12 AM | 212-328-2500 | TEXT |
| 207 | 05/10/2022 | 5:03 PM | 212-328-2500 | HUNG UP ON HIM |
| 208 | 05/10/2022 | 5:04 PM | 212-328-2500 | TEXT |
| 209 | 05/10/2022 | 5:04 PM | 212-328-2500 | TEXT |
| 210 | 05/12/2022 | 9:19 AM | 212-328-2500 | TEXT |
| 211 | 05/12/2022 | 9:19 AM | 212-328-2500 | TEXT |
| 212 | 05/13/2022 | 8:20 AM | 212-328-2500 | MISSED CALL |
| 213 | 05/13/2022 | 8:21 AM | 212-328-2500 | TEXT |
| 214 | 05/13/2022 | 8:22 AM | 212-328-2500 | TEXT |
| 215 | 05/13/2022 | 12:46 PM | 212-328-2500 | TEXT |
| 216 | 05/13/2022 | 2:24 PM | 212-328-2500 | TEXT |
| 217 | 05/13/2022 | 2:24 PM | 212-328-2500 | TEXT |
| 218 | 05/15/2022 | 2:24 PM | 212-328-2500 | TEXT |
| 219 | 05/17/2022 | 7:30 PM | 212-328-2500 | TEXT |
| 220 | 05/18/2022 | 8:54 AM | 212-328-2500 | TEXT |
| 221 | 05/30/2022 | 9:03 AM | 212-328-2500 | TEXT |
| 222 | 06/01/2022 | 8:21 AM | 212-328-2500 | TEXT |
| 223 | 06/01/2022 | 8:21 AM | 212-328-2500 | Missed Phone Call |
| 224 | 06/03/2022 | 12:28 PM | 212-328-2500 | TEXT |
| 225 | 06/06/2022 | 8:03 AM | 212-328-2500 | TEXT |
| 226 | 06/06/2022 | 11:55 AM | 212-328-2500 | TEXT |
| 227 | 06/06/2022 | 5:24 PM | 212-328-2500 | TEXT |
| 228 | 06/07/2022 | 9:26 AM | 212-328-2500 | TEXT |
| 229 | 07/04/2022 | 8:26 AM | 212-328-2500 | TEXT |
| 230 | 07/04/2022 | 8:26 AM | 212-328-2500 | TEXT |
| 231 | 07/25/2022 | 11:30 AM | 212-328-2500 | TEXT |
| 232 | 07/29/2022 | 12:41 PM | 212-328-2500 | TEXT |
| 233 | 08/23/2022 | 9:55 AM | 212-328-2500 | TEXT |
| 234 | 08/29/2022 | 11:13 AM | 212-328-2500 | TEXT |
| 235 | 09/05/2022 | 9:15 AM | 212-328-2500 | TEXT |
| 236 | 09/15/2022 | 12:21 PM | 212-328-2500 | TEXT |
| 237 | 09/27/2022 | 2:48 PM | 212-328-2500 | TEXT |
| 238 | 10/11/2022 | 7:55 AM | 212-328-2500 | TEXT |
| 239 | 10/12/2022 | 8:39 AM | 212-328-2500 | TEXT |
| 240 | 10/31/2022 | 9:12 AM | 212-328-2500 | TEXT |
| 241 | 01/24/2023 | 10:19 AM | 212-328-2500 | TEXT |
| 242 | 02/16/2023 | 8:47 AM | 212-328-2500 | TEXT |
| 243 | 03/17/2023 | 10:01 AM | 212-328-2500 | TEXT |
| 244 | 03/22/2023 | 10:01 AM | 212-328-2500 | TEXT |
| 245 | 06/20/2023 | 1:19 PM | 786-400-2415 | Max Milton |
| 246 | 06/21/2023 | 11:07 AM | 786-400-2415 | Max Milton |
| 247 | 08/24/2023 | 8:18 AM | 786-400-2415 | Max Milton |

| 248 | 09/19/2023 | 3:02 PM | 786-400-2415 | Max Milton |
| 249 | 09/20/2023 | 9:48 AM | 786-400-2415 | Max Milton |
| 250 | 11/03/2023 | 11:55 AM | 786-400-2415 | Max Milton |
| 251 | 11/03/2023 | 11:55 AM | 786-400-2415 | Max Milton |

63.    Plaintiff searched the Texas Secretary of State on March 5, 2023, and again on March 7,

2024, and did not find a valid Texas Solicitation Registration as required by Texas Business and

Commerce Code 302.101 for any of the Defendants.

64.    Defendants do not have a solicitation registration certificate on file with the Texas

Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a

Texas resident.

65.    Plaintiff was aggrieved, agitated, mocked, and insulted as a result of the unregistered

solicitation phone calls alleged herein.  This resulted in Plaintiff being stressed, aggravated, and

annoyed and caused Plaintiff to have to spend hours researching the identity and location of the

Defendants that failed to register to telephone solicit in Texas.

66.    Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored

the unlawful telephone dialing campaign, while knowing facts that required a reasonable person

to investigate further, and approved, and ratified the conduct of their employees, agents, and co-

conspirators to engage in the false and misleading sales practices and unlawful solicitation calls.

67.    Every call was placed without the maintenance of an internal do-not-call policy. Every

call was placed without training their agents/employees on the use of an internal do-not-call

policy.

68.    Plaintiff has limited data storage capacity on his cellular telephone. Incoming

telemarketing calls consumed part of this capacity.

69.    No emergency necessitated the calls.

70.     On information and belief, Defendants did not have a written do-not-call policy while it was sending Mr. Callier unsolicited calls.

71.     On information and belief, the Defendants did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

## DEFENDANT TILLER IS PERSONALLY LIABLE

72.     Defendant Tiller personally made phone calls to Plaintiff and participated in the calls alleged herein and is therefore personally liable.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

73.     Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy.

74.     Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

75.     Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

76.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

### Plaintiff's Cell Phone is a Residential Number

77.     The calls were to Plaintiff's cellular phone which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 17 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text

messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code § 302.101

78.     The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

79.     Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302."  Tex. Bus. & Com. Code § 302.303.

80.     The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish."  Tex. Bus. & Com. Code § 17.50.

81.     Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made."  Tex. Bus. & Com. Code § 302.101(a).

82.     Under Texas Business and Commerce Code § 302.302(a) Plaintiff is entitled to seek damages of up to $5000 per violation under §302.101.

83.     Under Texas Business and Commerce Code § 302.302(d) Plaintiff is entitled to all reasonable costs of prosecuting the case to include attorneys fees, deposition costs, investigation costs, and witness fees.

84.     Plaintiff was located in Texas at all times during the calls at issue in this Complaint.

85.     Plaintiff has been a Texas resident since July 2023 and maintains a Texas area code (915) telephone number.

86.     Each of the calls at issue in this case was to a Texas area code telephone number.

87.     On March 30, 2024, Plaintiff searched for a telephone solicitation registration for Defendant at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp.

88.     Plaintiff searched: initial registration, bond canceled, pending, renewal registration, closed, and suspended registration.  Plaintiff did not find any registration for Defendant.

89.     Defendant has never been registered to telephone solicit from Texas or into Texas.

90.     Plaintiff was aggrieved, insulted, irritated, and emotionally harmed by the phone calls in this Complaint.

## FIRST CLAIM FOR RELIEF

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))
### (Against All Defendants)

91.     Plaintiff realleges and incorporates by reference paragraphs 1-90.

92.     Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

93.     Plaintiff was statutorily damaged at least two hundred fifty-one (251) times under 47 U.S.C. § 227(c)(3)(F) by Defendants by the telephone calls described above, in the amount of $500 per call.

94.     Plaintiff is entitled to an award of up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## SECOND CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 302.101)

**(Against All Defendants)**

95.      Plaintiff realleges and incorporates by reference paragraphs 1-90.

96.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code § 302.101, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

97.      Mr. Callier is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. Texas Business and Commerce Code § 302.302(a).

98.      Plaintiff is entitled to an award of all reasonable costs of prosecuting the action including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees.  Texas Business and Commerce Code § 302.302(d).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $1,500 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for two hundred fifty-one (251) calls.

E.     An award of $5,000 in statutory damages arising from one hundred-nine (109) violations

of the Texas Business and Commerce code 302.101.

F.     An award to Mr. Callier of damages, as allowed by law under the TCPA;

G.     An award to Mr. Callier of interest, costs, and attorneys' fees, as allowed by law and

equity.

H.     Such further relief as the Court deems necessary, just, and proper.

Jury Trial Demanded

October 4, 2024,                         Respectfully submitted,


                                         /s/ Brandon Callier

                                         Brandon Callier
                                         Plaintiff, Pro Se
                                         1490 A George Dieter Drive
                                         #174
                                         El Paso, TX 79936
                                         915-383-4604
                                         Callier74@gmail.com